**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

LARRY MORRISON,

                Plaintiff,

       - against –

EMINENCE CAPITAL, L.P.; EMINENCE
CAPITAL GP, LLC; RICKY SANDLER;
EMINENCE PARTNERS II, L.P.; EMINENCE
PARTNERS LEVERAGED, L.P.; EMINENCE
EAGLEWOOD MASTER, L.P.; EMINENCE
PARTNERS LONG, L.P.; EMINENCE FUND
MASTER, LTD.; EMINENCE FUND
LEVERAGED MASTER, LTD.; EMINENCE
FUND LONG, LTD.; JOHN DOE; and
TAILORED BRANDS, INC.

                Defendants.

---

Case No.:   16-CV-3351  

**COMPLAINT**

**JURY TRIAL DEMAND**

---

Plaintiff, by his attorneys, alleges, based upon knowledge with respect to the facts relating to

him and upon information and belief with respect to all other allegations, as follows:

**INTRODUCTION**

1.      Section 16(b) of the Securities Exchange Act of 1934 (the "Exchange Act"), [15

U.S.C. 78p(b)] provides, *inter alia*, that beneficial owners of 10% or more of any class of

securities are required to disgorge to the issuer any profit realized from matching purchases and

sales (or sales and purchases) occurring within a six month period with those profits considered

short-swing insider trading profits.  In this action, Eminence (defined below in paragraph 9)

earned over $17 million in short-swing insider trading profits while being a member of a group

beneficially owning 10% or more of the outstanding common stock of Tailored Brands, Inc.

("Tailored" or the "Company"), or had a direct or indirect pecuniary interest in a member of that

group.  As a result, Defendants are required to disgorge their respective share of short-swing

insider trading profits to the Company.

## PARTIES

2.      Plaintiff Larry Morrison is a shareholder of Tailored Brands.

3.      (a)     Tailored Brands, Inc. ("Tailored Brands") is a Texas corporation which

maintains its corporate offices in Houston, Texas, and its executive offices in Fremont,

California.  Tailored's common stock is, and at all relevant times was, registered with the

Securities and Exchange Commission ("SEC") pursuant to Section 12 of the Securities Exchange

Act of 1934 (the "Exchange Act") and trades on the New York Stock Exchange ("NYSE").

        (b)     Tailored Brands is a holding company which, pursuant to a merger (the

"Merger") effected on January 31, 2016, now serves as the parent company of Men's

Wearhouse.  The Merger was effected pursuant to an Agreement and Plan of Merger in

accordance with Section 10.005 of the Texas Business Organizations Code.  Each issued and

outstanding share of common stock, par value $0.01, of Men's Wearhouse was automatically

converted into one share of common stock, par value $0.01, of Tailored Brands, having the same

designations, preferences, limitations, and relative rights and corresponding obligations in

respect of the shares of common stock as the shares of common stock of Men's Wearhouse.

Accordingly, the Merger was a reorganization which did not affect Plaintiff's ownership of the

business enterprise.

        (c)     The Agreement and Plan of Merger provided that Tailored Brands is a

successor issuer of Men's Wearhouse within the meaning of Rule 414 promulgated under the

Securities Act of 1933 (the "Securities Act") [17 C.F.R. §230.414] and Rule 12g-3 of the

Exchange Act [17 C.F.R. §240.12g-3].  As a successor issuer, Tailored Brands owns all of the

assets previously owned by Men's Wearhouse including the Section 16(b) claim at issue in this action. *See* 17 C.F.R. §230.414(b). In addition, the conversion of the shares of Men's Wearhouse in the Merger occurred without an exchange of shares with certificates formerly representing outstanding shares of common stock of Men's Wearhouse being deemed to represent the same number of shares of common stock of Tailored Brands.

(d)     The Agreement and Plan of Merger was approved by the directors of Men's Wearhouse on January 26, 2016, after Plaintiff, as a shareholder of Men's Wearhouse, had written a letter demanding that the Company recover Section 16(b) short swing profits from Eminence. The directors of Men's Wearhouse, however, failed to obtain approval of the Merger from Men's Wearhouse shareholders at a meeting for which proxies were solicited pursuant to Section 14(a) of the Exchange Act as required by Securities Act Rule 414(c) [17 C.F.R. §230.414(c)]. Accordingly, the Agreement and Plan of Merger was a fraudulent effort to deprive Plaintiff of standing to pursue his Section 16(b) claims and is also void *ab initio* for failure to comply with the requirements of the federal securities law in proceeding with such a merger.

(e)     Tailored is a necessary party and nominal defendant as this action is brought by plaintiff in order to obtain a recovery for the Company.

4.     Defendant Eminence Capital, LLC  ("Eminence Capital") is a New York limited liability company which maintains its executive offices at 65 East 55th Street, 25th Floor, New York, NY 10022. The principal business of Eminence Capital is that of an investment manager engaging in the purchase and sale of securities on behalf of clients.

5.     Eminence GP, LLC, ("Eminence GP") is a New York limited liability company which maintains its executive offices at 65 East 55th Street, 25th Floor, New York, NY 10022.

The principal business of Eminence GP is serving as a general partner for the Eminence Funds organized as Partnerships and manager to the Eminence Funds organized as Master Funds.

6.     Defendant Ricky Sandler ("Sandler") serves as the Chief Executive Officer of Eminence Capital and as the Managing Member of defendant Eminence GP and maintains his principal place of business at 65 East 55th Street, 25th Floor, New York, NY 10022.

7.     The "Eminence Funds" consist of the following Partnerships, Master Funds and other separately managed accounts, each of which are named as Defendants:

     (a)     Eminence Partners, L.P. ("Eminence I"), a New York limited partnership;

     (b)     Eminence Partners II, L.P., a New York limited partnership ("Eminence II");

     (c)     Eminence Partners Leveraged, L.P., a Delaware limited partnership ("Eminence Leveraged");

     (d)     Eminence Eaglewood Master, L.P., a Delaware limited partnership ("Eminence Eaglewood");

     (e)     Eminence Partners Long, L.P., a Delaware limited partnership;

     (f)     Eminence Fund Long, Ltd., a Cayman Islands exempted company;

     (g)     Eminence Fund Master, Ltd., a Cayman Islands exempted company ("Eminence Offshore Master Fund");

     (h)     Eminence Fund Leveraged Master, Ltd., a Cayman Islands exempted company ("Eminence Offshore Leveraged Master Fund"); and

     (i)     John Doe is a separately managed account (the "SMA").

8.     Eminence Capital, Eminence GP, Sandler and the Eminence Funds are collectively referred to herein as "Eminence."

## JURISDICTION AND VENUE

9.      Jurisdiction of this Court is proper pursuant to Section 27 of the Exchange Act [15

U.S.C. §78aa].  Venue is properly laid in this District because defendants Eminence Capital,

Eminence GP, Sandler and the Eminence Funds are located in this District.

## CLAIM FOR RELIEF

10.      On September 8, 2013, Jos. A Bank Clothiers, Inc. ("JOSB") publicly expressed

an interest in acquiring Men's Wearhouse for $48 per share.

11.      On October 9, 2013, the Company rejected JOSB's proposal (the "Proposal") as

inadequate.  At the same time, the Company's board of directors (the "Board") declared a

dividend of one preferred share purchase right (a "Right") for each outstanding share of the

Company's common stock payable on October 21, 2013 and set to expire on September 30,

2014.  The Right generally became exercisable allowing holders to acquire the Company's

common stock at a discounted price if a person or group acquires beneficial ownership of 10%

percent or more of Men's Wearhouse common stock (15% in the case of a passive institutional

investor) in a transaction not approved by the Board.

12.      (a)      On November 7, 2013, Eminence filed a Schedule 13D with the SEC with

respect to their investment in the Company disclosing that it beneficially owned 4,684,200 shares

of the Company's common stock amounting to approximately 9.8% of the shares outstanding. In

addition, the Schedule 13D disclosed that Eminence sent a letter (the "Letter") to the Board

expressing disappointment in the Board's response to JOSB's proposal to acquire Men's

Wearhouse.

(b)      In the Letter, Eminence stated that the Board's fiduciary duties require that

they immediately: (i) instruct their financial advisors to evaluate all strategic alternatives

available to the Issuer and (ii) enter into a dialogue with Jos. A. Bank regarding a possible

combination.  The Letter also stated that Eminence intended to fully exercise their rights as

shareholders to hold the Board accountable if it fails to take these actions by close of business on

November 11, 2013.  The Schedule 13D also stated that:

> [Eminence] intends to continue to engage in discussions with management of the
> Issuer, as well as with its Board, other shareholders, Jos. A. Bank and other
> interested parties, regarding the Proposal, and with respect to [Men's
> Wearhouse's] business, management, strategic direction and related matters.

**Eminence Joins Together as a Group With Other Shareholders**
**of the Company to Vote for a Special Meeting and Bylaw Amendments**

13.     On November 15, 2013, JOSB announced that it was terminating its offer to

purchase the Company.

14.     On November 15, 2013, Eminence issued a press release announcing that it had

filed a preliminary solicitation statement with the SEC seeking to call a special meeting of Men's

Wearhouse shareholders to vote on a number of bylaw amendments that, if approved, would

permit shareholders to remove directors without cause before the next annual meeting of

shareholders.  The press release was also attached to an amended Schedule 13D filed with the

SEC on the same day.

15.     On November 20, 2013, Eminence issued a press release announcing the release

of a presentation purportedly describing "how shareholders can unlock value at the company and

why [the Company's] Board of Directors should engage in merger discussions with Jos. A. Bank

Clothiers, Inc. (JOSB)."  The press release also identified Moelis & Company, a leading global

investment bank, as an advisor and D.F. King & Co., Inc. as a proxy solicitor.

16.     On November 22, 2013, Eminence filed a revised preliminary solicitation

statement with the SEC.

17.     On November 25, 2013, a published report stated that:

Eminence and other hedge funds that hold about 30 percent of Men's Wearhouse shares see the retailer as an undervalued stock that would benefit from striking a deal with its competitor. Some of these new holders have even crept into the top 20 shareholder list, according to sources at the funds.

N. Damouni and O. Oran, *Analysis: Men's Wearhouse alterations could backfire on retailer* (Reuters, Nov. 25, 2013).

18.     On November 26, 2013, the pressure brought to bear by Eminence in combination with other investors who collectively beneficially owned 10% or more of the Company's outstanding common stock and who had joined together either formally or informally to vote in favor of Eminence's consent solicitation bore fruit as the Company offered $1.54 billion (or $55 per share) in cash to acquire JOSB.

19.     Those investors failed to make any filings with the SEC disclosing the identity of its members or its precise objectives.  This failure by hedge funds acting as "wolfpacks" at the direction of an activist investor like Eminence is currently the subject of SEC investigations into the wrongful failure to make proper filings with the SEC disclosing those facts as required by the federal securities laws.  *See, e.g.*, Liz Hoffman et al., *SEC Probes Activist Funds Over whether They Secretly Acted in Concert* (The Wall Street Journal, June 4, 2015).

20.     On January 6, 2014, after JOSB rejected the Company's initial bid, Men's Wearhouse raised its bid for JOSB to $1.61 billion (or $57.50 per share).

21.     On January 13, 2014, Eminence issued a press release including the full text of a letter they had sent to JOSB's board of directors stating, among other things, that Eminence (i) supported an acquisition of JOSB by the Company, (ii) demanding that the JOSB board of directors refrain from entering into any acquisition transaction that could jeopardize the combination with the Issuer and (iii) threatening to file a complaint seeking preliminary

7

injunctive relief to prevent JOSB and its directors from continuing to breach their fiduciary duties by refusing to negotiate with the Company and by attempting to prevent any acquisition of the Company by pursuing an alternative transaction.

22.    On January 13, 2014, Eminence Capital LLC filed an action in the Delaware Court of Chancery for breach of fiduciary duty against the board of directors of JOSB based upon, among other things, their failure to negotiate in good faith with respect to the Company's proposed acquisition of Jos. A. Bank.

**Eminence Joins Together With Members of the Company's Board to Form
Another Group Beneficially Owning 10% or More of the Company's Common Stock**

23.    On February 24, 2014, the Company amended its January 6, 2014 offer to acquire Jos. A. Bank to, among other things, increase the tender offer price from $57.50 to $63.50 per share and announced a willingness to further increase the price to $65.00 per share.

24.    On February 24, 2014, Eminence Capital and certain of its affiliates entered into a standstill agreement (the "Standstill Agreement") with the Company and Jos. A Bank in order to induce the Company to amend its tender offer for JOSB by increasing the offer price per share from $57.50 to $63.50 per share and announcing a willingness to further increase the tender offer price to $65.00 per share.

25.    (a)    The Standstill Agreement provided, among other things, that Eminence would cease all efforts in furtherance of the preliminary solicitation statement filed with the SEC on November 15, 2013 and any related solicitation of the Company's stockholders in connection therewith and would withdraw its demand to inspect Men's Wearhouse's stockholder list and books and records.  Instead, the Agreement provided that Eminence would vote its shares of common stock in accordance with the recommendation of the members of the Board.  Standstill Agreement ¶3.

8

(b)     This provision of the Standstill Agreement reflected a formal or informal understanding between Eminence, on the one hand, and the members of the Board, on the other hand together as a group within the meaning of Section 13(d) of the Exchange Act for the purpose of voting the Company's common stock.  As a result, Eminence became a beneficial owner of 10% or more of Men's Wearhouse common stock in a group which was formed with members of the Board.

26.     The group Eminence formed with members of the Board was effective until the conclusion of the second annual meeting following February 14, 2014.  *See* Agreement ¶2.  That second annual meeting took place on July 1, 2015.  *See* Schedule 14A filed with the SEC on May 19, 2015.  Accordingly, Eminence was a beneficial owner of 10% or more of MW's common stock by virtue of being part of this group from at least February 24, 2014 through at least July 1, 2015.

27.     On March 13, 2014, Eminence voluntarily dismissed the complaint it had previously filed against the board of directors of JOSB.

28.     On May 5, 2014, the Company entered into an amendment to the Rights Agreement causing the Rights to expire that day.

**Eminence Also Becomes a Beneficial Owner of 10% of the
Company's Common Stock Through Open Market Purchase**

29.     A Schedule 13D/A filed by Eminence with the SEC and dated December 18, 2014 disclosed that on December 16, 2014, Eminence purchased a total of 1,125,000 shares of the Company's common stock (the "Common Stock") for a price per share of $41.88 causing Eminence to become individually the beneficial owner of 11.8% of the Common Stock. According to the Schedule 13D/A, this transaction was "effected in the open market through a broker and includes brokerage commissions."  Exhibit 6 to the Schedule 13D/A contained an

amendment to the Standstill Agreement dated as of December 16, 2014, allowing Eminence to beneficially own up to 12% of the Company's common stock up from the original 10% limit.

30.     A review of that day's trading data for Men's Wearhouse common stock on the NYSE as reported by the Bloomberg service demonstrates that no single trade for 1,125,000 shares of Men's Wearhouse stock took place that day.  Instead, the 1,125,000 share transaction reported aggregates many smaller transactions in Men's Wearhouse common stock which Eminence engaged in either directly or through an agent causing almost the entire purchase to have been made after Eminence individually (and without reference to its status as a member of a group beneficially owing 10% or more of the Company's common stock) became a beneficial owner of 10% or more of the Company's common stock.

**Eminence Earned Short-Swing Profits From Trading Men's Wearhouse Common Stock**

31.     On December 16, 2014, Eminence purchased a total of 1,125,000 shares of Men's Wearhouse common stock for an average price per share of $41.88.

32.     Eminence made at least the following matching sales of Men's Wearhouse common stock within a six month period at higher prices than the December 16, 2014 purchase:

(a)     A June 5, 2015 sale of 1,047,097 shares at $57.97 per share;

(b)     A May 26, 2015 sale of 5,843 shares at $58.29 per shares;

(c)     A May 7, 2015 sale of 11,234 shares at $57.78 per share;

(d)     An April 27, 2015 sale of 9,446 shares at $57.14 per share; and

(e)     A December 1, 2014 sale of 43,842 shares at $46.72 per share.

33.     Plaintiff estimates that through this trading activity, Eminence earned total short-swing trading profits disgorgable under Section 16(b) of at least $17.4 million.

## BASIS FOR INFORMATION AND BELIEF

34.     Plaintiff's information and belief is based on, among other things a review of filings made with the SEC by the Company and Eminence as well as a review of other publicly available information including press reports.

## ALLEGATIONS AS TO DEMAND

35.     On December 11, 2015, counsel for Plaintiff wrote a letter making a demand on the Board, a copy of which is attached hereto as Exhibit A.

36.     On December 18, 2015, Men's Wearhouse through Sandy Rhodes, the Company's General Counsel, wrote a letter to Plaintiff's counsel, a copy of which is attached hereto as Exhibit B, stating that:

> We are investigating the claim and may need Board approval to take certain action, depending on the results of the investigation.  We have a regularly scheduled Board meeting in the third week of January and will get back to you no later than shortly after the meeting concludes.

37.     On January 29, 2016, Men's Wearhouse responded by attaching a January 28, 2016 letter from counsel for Eminence and stating that the Board concurred with Eminence's analysis and considered the matter closed.  The January 29th communication from Men's Wearhouse is attached hereto as Exhibit C.

38.     On February 4, 2016, Plaintiff through his counsel sent a new letter to the Board copying counsel for Eminence identifying deficiencies in Eminence's analysis of the facts relevant to its Section 16(b) liability.  A copy of that letter is attached hereto as Exhibit D.

39.     On February 9, 2016, Men's Wearhouse sent an e-mail to Plaintiff's counsel, a copy of which is attached hereto as Exhibit E, claiming that the February 4, 2016 letter constituted a new demand on the Board and stated that Eminence would respond to the letter by February 9, 2016.

40.     On February 12, 2016, counsel for Eminence sent an e-mail, a copy of which is attached hereto as Exhibit F, requesting additional time within which to respond to the contents of the February 4th letter.

41.     On February 29, 2016, Eminence sent Plaintiff's counsel a copy of a February 26, 2016 letter it had sent to the Company addressing the merits of Plaintiff's claim.

42.     On March 22, 2016, the Company's General Counsel addressed a letter to Plaintiff's counsel stating that based on the facts set forth in Eminence's February 26, 2016 letter, the Company "does not have a reasonable basis to believe that the Eminence Group realized short-swing trading profits in violation of Section 16(b), as alleged."  The letter also stated that bringing the lawsuit was "not in the best interest of its shareholders given, in our view, the substantial likelihood that the suit would be fruitless."

43.     On April 5, 2016, Plaintiff sent a letter to the Company's General Counsel explaining the flaws in the analysis of Section 16(b) liability contained in Eminence's February 26th letter.  A copy of that April 5th letter is attached hereto as Exhibit G.

44.     On April 20, 2016, the Company's General Counsel wrote to Plaintiff's counsel once again declining to bring any Section 16(b) action and considering "this matter closed."

45.     More than sixty days have passed from Plaintiff having made a demand on the Board with the Company failing to recover short swing insider trading profits or to institute a lawsuit to recover those profits.

## <u>PRAYER FOR RELIEF</u>

WHEREFORE, Plaintiff prays for judgment against Defendants for the benefit of

Tailored Brands in an amount to be determined at trial, plus pre-judgment interest, post-

judgment interest and such other and further relief as this Court may deem just and proper.

Dated: May 5, 2016

                              **ABRAHAM, FRUCHTER & TWERSKY, LLP**

                              By: _____
                                   Jeffrey S. Abraham
                                   One Penn Plaza, Suite 2805
                                   New York, New York 10119
                                   Tel.: (212) 279-5050
                                   Fax: (212) 279-3655

                              **Attorneys for Plaintiff Larry Morrison**