UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

USDC-SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC#:
DATE FILED: 3/1/2017

| | |
|---|---|
| LARRY MORRISON,<br><br>                              Plaintiff,<br><br>            v.<br><br>EMINENCE CAPITAL, LLC; EMINENCE GP, LLC; RICKY C. SANDLER; EMINENCE PARTNERS, L.P.; EMINENCE PARTNERS II, L.P.; EMINENCE PARTNERS LEVERAGED, L.P.; EMINENCE EAGLEWOOD MASTER, L.P.; EMINENCE PARTNERS LONG, L.P.; EMINENCE FUND MASTER, LTD.; EMINENCE FUND LEVERAGED MASTER, LTD.; EMINENCE FUND LONG, LTD.; JOHN DOE; and TAILORED BRANDS, INC.,<br><br>                              Defendants. | No. 16-CV-3351 (RA)<br><br>OPINION & ORDER |

RONNIE ABRAMS, United States District Judge:

Plaintiff Larry Morrison brings this action under Section 16(b) of the Securities Exchange Act of 1934 (the "Exchange Act") against Defendants Eminence Capital[1], John Doe, and Tailored Brands, Inc. ("Tailored Brands"). Defendants now move for dismissal under Federal Rules of Civil Procedure 9(b), 12(b)(1), and 12(b)(6). Because Plaintiff has failed to state a claim under Section 16(b), the Court grants Defendants' motion and dismisses the action.[2]

---

[1] "Eminence Capital" includes the following defendants: Eminence Capital, LLC; Eminence GP, LLC; Ricky C. Sandler; Eminence Partners, L.P.; Eminence Partners II, L.P.; Eminence Partners Leveraged, L.P.; Eminence Eaglewood Master, L.P.; Eminence Partners Long, L.P.; Eminence Fund Master, Ltd.; Eminence Fund Leveraged Master, Ltd.; and Eminence Fund Long, Ltd.

[2] Defendants also move to strike certain portions of the Amended Complaint under Rule 12(f). Because the Court is granting Defendants' motion to dismiss, the motion to strike is denied as moot.

## BACKGROUND

Plaintiff and Eminence Capital are former shareholders of The Men's Wearhouse, Inc. ("Men's Wearhouse"), a retailer specializing in menswear. *See* Am. Compl. ¶¶ 2, 3, 12, 17, 29–33, Ex. A.   On September 8, 2013, Jos. A. Bank Clothiers, Inc. ("JOSB"), one of Men's Wearhouse's competitors, publicly expressed an interest in acquiring Men's Wearhouse at a price of $48 per share. *Id.* ¶¶ 10, 17.  Men's Wearhouse rejected JOSB's proposal as inadequate on October 9, 2013. *Id.* ¶ 11.  On November 7, 2013, Eminence Capital filed a Schedule 13D with the Securities and Exchange Commission (the "SEC"), which, among other things, disclosed Eminence Capital's status as the beneficial owner of 4,684,200 shares of Men's Wearhouse's common stock—roughly 9.8% of the shares outstanding at the time. *Id.* ¶ 12(a).  The Schedule 13D also disclosed that Eminence Capital had sent a letter to the board of directors of Men's Wearhouse (the "MW Board") expressing disappointment with the MW Board's response to JOSB's proposal and exhorting the MW Board to enter into a "dialogue" with JOSB regarding a possible merger. *Id.* ¶ 12(a)–(b).  On November 15, 2013, JOSB announced that it was terminating its offer to purchase Men's Wearhouse. *Id.* ¶ 13.

Eminence Capital continued to campaign for a merger and pressure the MW Board.  On November 15, 2013, Eminence Capital announced that it had filed a preliminary solicitation statement (the "Proxy Solicitation") with the SEC seeking to call a special meeting of Men's Wearhouse shareholders to vote on bylaw amendments that would allow shareholders to remove directors without cause before the next annual shareholder meeting. *Id.* ¶ 14.  On November 20, 2013, Eminence Capital announced the release of a presentation that purported to describe "why [the MW Board] should engage in merger discussions with [JOSB]." *Id.* ¶ 15.  During the same

period, Eminence Capital also appears to have made a demand to inspect Men's Wearhouse's stockholder list and books and records. *See id.* ¶ 25(a).

The MW Board eventually acquiesced and tendered an offer to purchase JOSB at a price of $55 per share on November 26, 2013. *Id.* ¶ 18. JOSB rejected this initial bid and, in response, Men's Wearhouse raised its bid to $57.50 per share on January 6, 2014. *Id.* ¶ 20. One week later, Eminence Capital filed an action in the Delaware Court of Chancery against the board of directors of JOSB, claiming that the JOSB board had breached its fiduciary duty by failing to negotiate with Men's Wearhouse in good faith. *See id.* ¶ 22.

On February 24, 2014, Men's Wearhouse increased the tender offer price to $63.50 per share, and announced a willingness to further increase the price to $65 per share. *Id.* ¶ 23. According to the Amended Complaint, this new offer was induced by a Standstill Agreement entered into by Eminence Capital and Men's Wearhouse. *Id.* ¶ 24. In exchange for Men's Wearhouse's increased bid, the Standstill Agreement provided, among other things, that Eminence Capital would withdraw the Proxy Solicitation and cease its efforts to pressure the MW Board. *See id.* ¶ 25(a). The Standstill Agreement also provided that Eminence Capital would vote its shares of common stock in accordance with the recommendation of the MW Board. *Id.* Plaintiff alleges that the Standstill Agreement "reflected a formal or informal understanding between Eminence [Capital] . . . and the members of the [MW Board]," which formed "a group within the meaning of Section 13(d) of the Exchange Act for the purpose of voting [Men's Wearhouse's] common stock." *Id.* ¶ 25(b). The alleged group's collective stake in Men's Wearhouse exceeded 10% of Men's Wearhouse's outstanding shares. *Id.* According to Plaintiff, the Standstill Agreement was operative from February 24, 2014 through at least July 1, 2015. *See id.* ¶ 26.[3]

---

[3] Men's Wearhouse's acquisition of JOSB was eventually completed. It closed on June 18, 2014. Eminence Capital's Mem. at 7; Pl.'s Opp. at 5; *see also* Swartz Decl. Ex. F, June 23, 2016.

On December 16, 2014, Eminence Capital is alleged to have purchased a total of 1,125,000 shares of Men's Wearhouse's common stock for an average price of $41.88 per share, thus becoming the beneficial owner of 11.8% of the outstanding shares. *See id.* ¶¶ 29, 31.[4] According to the Amended Complaint, Eminence Capital made the following sales of Men's Wearhouse stock during the same general period: (1) a December 1, 2014 sale of 43,842 shares at $46.72 per share; (2) an April 27, 2015 sale of 9,446 shares at $57.14 per share; (3) a May 7, 2015 sale of 11,234 shares at $57.78 per share; (4) a May 26, 2015 sale of 5,843 shares at $58.29 per share; and (5) a June 5, 2015 sale of 1,047,097 shares at $57.97 per share. *Id.* ¶ 32. Plaintiff alleges that Eminence Capital realized approximately $17.4 million in profits from these sales, all of which occurred within six months of the December 16, 2014 purchase of shares. *Id.* ¶¶ 32–33.

On December 11, 2015, Plaintiff sent a letter to Men's Wearhouse demanding that it pursue a Section 16(b) claim against Eminence Capital. *See id.* ¶ 35, Ex. A. After a series of communications between Plaintiff, Men's Wearhouse, and Eminence Capital, Men's Wearhouse declined to sue. *See id.* ¶¶ 36–44. On January 26, 2016, the MW Board approved an Agreement and Plan of Merger (the "Reorganization") to reorganize Men's Wearhouse into a wholly-owned subsidiary of Tailored Brands. *Id.* ¶ 3(b)–(d). The Reorganization took place on January 31, 2016 in the form of a stock-for-stock swap—i.e., each outstanding share of common stock in Men's Wearhouse was converted into one share in Tailored Brands. *Id.* ¶ 3(b). As a result of the Reorganization, Plaintiff was no longer a shareholder of Men's Wearhouse and became a shareholder of its parent, Tailored Brands. *Id.* ¶ 2. Plaintiff filed this action on May 5, 2016.

---

[4] Plaintiff alleges that Eminence Capital purchased these shares over a series of transactions, "causing almost the entire purchase to have been made after Eminence [Capital] . . . became a beneficial owner of 10% or more of the Company's common stock." Am. Compl. ¶ 30.

## STANDARD OF REVIEW

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotation marks omitted). While the Court must accept as true "all of the factual allegations in the complaint," it may disregard "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Id.* A claim is plausible when the plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

## DISCUSSION

Section 16 of the Exchange Act imposes certain requirements and prohibitions on a statutorily defined set of persons, commonly known as statutory insiders. *See generally* 15 U.S.C. § 78p. A statutory insider is one "who is directly or indirectly the beneficial owner of more than 10 percent of any class of any equity security (other than an exempted security) which is registered pursuant to [15 U.S.C. § 78*l*], or who is a director or an officer of the issuer of such security." *Id.* § 78p(a)(1). Statutory insiders are prohibited under Section 16(b) from realizing profits from the purchase and sale of securities of the issuer within any given six-month period—i.e., "short-swing profits." *Id.* § 78p(b). Specifically, Section 16(b) states that:

> For the purpose of preventing the unfair use of information which may have been obtained by such beneficial owner, director, or officer by reason of his relationship to the issuer, any profit realized by him from any purchase and sale, or any sale and purchase, of any equity security of such issuer (other than an exempted security) or a security-based swap agreement involving any such equity security within any period of less than six months, unless such security or security-based swap agreement was acquired in good faith in connection with a debt previously contracted, shall inure to and be recoverable by the issuer, irrespective of any intention on the part of such beneficial owner, director, or officer in entering into such transaction of holding the security or security-based swap agreement purchased or of not repurchasing the security or security-based swap agreement sold for a period exceeding six months.

5

*Id.* In essence, Section 16(b) liability exists when there is "(1) a purchase and (2) a sale of securities (3) by an officer or director of the issuer or by a shareholder who owns more than ten percent of any one class of the issuer's securities (4) within a six-month period." *Feder ex rel. Ivax Corp. v. Frost*, 220 F.3d 29, 32 (2d Cir. 2000) (quotation marks omitted).

Section 16(b) further provides that "[s]uit to recover . . . may be instituted at law or in equity in any court of competent jurisdiction by the *issuer*, or by the *owner of any security of the issuer* in the name and in behalf of the issuer if the issuer shall fail or refuse to bring such suit within sixty days after request or shall fail diligently to prosecute the same thereafter." 15 U.S.C. § 78p(b) (emphasis added). In that sense, Section 16(b) claims may be said to include a fifth element of "standing," which requires that a plaintiff be an "issuer" or the "owner of any security of the issuer" who has complied with the 60-day demand procedure. *Id.*[5]

In this case, Plaintiff alleges that Eminence Capital was part of a group that beneficially owned 10% or more of Men's Wearhouse's common stock from February 24, 2014 until at least July 1, 2015. *See* Am. Compl. ¶ 26; Pl.'s Opp. at 10–17. Alternatively, Plaintiff alleges that Eminence Capital became a beneficial owner of 10% or more of Men's Wearhouse's stock through purchases made on December 16, 2014. *See* Am. Compl. ¶¶ 29–30; Pl.'s Opp. at 8–10. As a result, Plaintiff argues that Eminence Capital was a statutory insider under Section 16 when it engaged in matchable purchases and sales within six months of December 16, 2014. *See* Am. Compl. ¶¶ 31–33; Pl.'s Opp. at 6. Plaintiff thus asserts that Eminence Capital is liable under

---

[5] This "standing" requirement is not jurisdictional; it is "simply a question of whether the particular plaintiff 'has a cause of action under the statute.'" *Am. Psychiatric Ass'n v. Anthem Health Plans, Inc.*, 821 F.3d 352, 359 (2d Cir. 2016) (quoting *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 134 S. Ct. 1377, 1387 (2014)). The Court's use of the term "standing" in this Opinion & Order refers only to the statutory requirement set forth in Section 16(b).

Section 16(b) and must disgorge the approximately $17.4 million that it earned from those transactions. *See* Am. Compl. ¶¶ 1, 31–33; Pl.'s Opp. at 6–7.

In their motion, Defendants argue that Plaintiff lacks statutory standing under Section 16(b) because he was neither the issuer nor a shareholder of the issuer at the time he brought this lawsuit. Defendants also dispute Eminence Capital's status as a statutory insider under Section 16. For the reasons discussed below, the Court agrees with Defendants that Plaintiff does not have standing to bring this action under Section 16(b). The Court therefore need not reach the question of whether Eminence Capital qualified as a statutory insider under Section 16.

Section 16(b) lawsuits "may be instituted at law or in equity in any court of competent jurisdiction by the issuer, or by the owner of any security of the issuer in the name and in behalf of the issuer." 15 U.S.C. § 78p(b). In *Gollust v. Mendell*, the Supreme Court narrowly interpreted the term "issuer" for purposes of Section 16(b) standing as being limited to "the corporation that actually issued the security," expressly excluding "parent or subsidiary corporations" from the definition. 501 U.S. 115, 123 (1991). The Court further explained that "[w]hile this requirement is strict on its face, it is ostensibly subject to mitigation in the final requirement for § 16(b) standing, which is merely that the plaintiff own a security of the issuer at the time the § 16(b) action is 'instituted.'" *Id.* at 123–24 (explaining that "the word institute is commonly understood to mean inaugurate or commence; as to institute an action" (quotation marks omitted)). Thus, non-issuer plaintiffs who wish to bring claims under Section 16(b) against statutory insiders must: (1) be shareholders of the corporation that "actually issued" the securities (2) at the time they "institute" their lawsuit. *See id.*

Here, Plaintiff does not dispute that, at the time he instituted this lawsuit, he was not a shareholder of the issuer—i.e., Men's Wearhouse. Instead, Plaintiff was a shareholder of Men's

Wearhouse's parent corporation, Tailored Brands. Am. Compl. ¶ 2. A straightforward application of *Gollust*'s language to these facts bars Plaintiff from bringing this Section 16(b) action. Plaintiff, however, raises numerous arguments that purport to circumvent *Gollust*. None pass muster.

First, Plaintiff argues that the language cited above from *Gollust* was merely dictum. The plaintiff in *Gollust* was a shareholder of Viacom International, Inc. ("International") at the time that he brought a Section 16(b) action on International's behalf. 501 U.S. at 118. International was then acquired by another company during the pendency of the lawsuit, and International's shareholders "received a combination of cash and stock in [the acquiring company] in exchange for their International stock." *Id.* at 118–19. Despite the fact that the plaintiff no longer owned International stock, the Supreme Court held that the plaintiff satisfied Section 16(b)'s standing requirement because "[h]e owned a 'security' of the 'issuer' at the time he 'instituted' [the] action" and "retain[ed] a continuing financial interest in the outcome of the litigation." *Id.* at 127. Plaintiff argues that the only question decided in *Gollust* was whether a plaintiff who properly files a Section 16(b) lawsuit loses standing due to a corporate reorganization that occurs while the action is pending. *See* Pl.'s Opp. at 19. In Plaintiff's view, the Supreme Court's interpretation of the term "issuer" was not necessary to decide that question and was thus dictum. *See id.*

Even assuming for the sake of argument that *Gollust*'s definition of "issuer" was dictum, Plaintiff fails to offer a compelling reason why the Court should decline to follow it. "[L]anguage the Supreme Court uses when it explicitly announces its holding must be assumed to have been crafted with care . . . ." *Kinstler v. First Reliance Standard Life Ins. Co.*, 181 F.3d 243, 250 (2d Cir. 1999). Where, as in *Gollust*, a unanimous Supreme Court delivers a clear interpretation of a federal statute, it would be ill-advised, in the absence of contrary precedent, for a lower court to ignore that interpretation solely because of a nebulous boundary between holding and dictum. *See*

*United States v. Bell*, 524 F.2d 202, 206 (2d Cir. 1975) ("While . . . dictum is not binding upon us, it must be given considerable weight and can not be ignored in the resolution of the close question we have to decide." (footnote omitted)); *Pearson Educ., Inc. v. Liu*, 656 F. Supp. 2d 407, 416 (S.D.N.Y. 2009) ("When the Supreme Court addresses an unsettled question of federal law in unanimous dicta, respect for the Supreme Court as an institution and the dedicated jurists who serve on it mandates deference in all but the most exceptional circumstances.").

Plaintiff fails to cite to any cases, Supreme Court or otherwise, that cast serious doubt on *Gollust*'s definition of a Section 16(b) "issuer." Plaintiff relies principally on a pre-*Gollust* district court case for the proposition that a "successor in interest" exception exists to the otherwise strict requirements of Section 16(b) standing. *See Blau v. Oppenheim*, 250 F. Supp. 881 (S.D.N.Y. 1966). In *Blau*, the court held that the term "issuer" "is broad enough to embrace an issuer's successor in interest or a surviving corporation to which has been transferred all its assets, properties and choses in action." *Id.* at 884. The court thus permitted the plaintiff to proceed with his Section 16(b) action, even though he was not a shareholder of the issuer when he filed the lawsuit, because the issuer had merged and dissolved into another corporation. *See id.* at 883, 888.

As an initial matter, *Blau*'s holding appears to be in direct conflict with the Supreme Court's language in *Gollust*. It is therefore unlikely that *Blau*'s generous reading of the term "issuer" remains good law. *See Bell*, 524 F.2d at 206 (following Supreme Court dicta where the opposing party failed to offer any precedent "squarely in point" to rule otherwise); *see also Heine ex rel. Comput. Assocs. Int'l, Inc., v. Soros*, No. 93-CV-9027 (LMM), 1994 WL 613304, at *1 (S.D.N.Y. Nov. 7, 1994) (holding that a "stockholder of a parent corporation" may not sue on behalf of "either the parent or the subsidiary corporation when the issuer has been merged into the parent"). But even if the Court were to assume that the successor in interest exception articulated

in *Blau* did survive *Gollust*, the Second Circuit has since circumscribed that exception.   In *Untermeyer v. Valhi, Inc.*, another case preceding *Gollust*, the Second Circuit held that the successor in interest exception applies only to cases in which the issuer had "merged out of existence" before a plaintiff could file a Section 16(b) action.   841 F.2d 25, 25 (2d Cir. 1988). Other circuits have reached similar results. *See Lewis v. McAdam*, 762 F.2d 800, 803–04 (9th Cir. 1985) (holding that a shareholder of a parent corporation does not have standing to bring a Section 16(b) claim on behalf of subsidiaries); *Portnoy v. Kawecki Berylco Indus., Inc.*, 607 F.2d 765, 768 (7th Cir. 1979) ("*Blau* is factually distinguishable in that the issuer no longer existed [at the time of the lawsuit], whereas in the present case KBI still exists as a viable corporate entity.").   Simply put, if the original issuer remains in existence after a merger at the time a Section 16(b) action is filed, the successor in interest exception does not apply. *Untermeyer*, 841 F.2d at 25 (holding that where an issuer "survived the merger and remains a viable corporate entity" only "it or its shareholder . . . can bring an action under section 16(b)").

There is no dispute in this case that Men's Wearhouse remains a viable corporation.   Thus, even if *Blau*'s successor in interest exception survived *Gollust*, it would not change the fact that the only entities with standing to bring a Section 16(b) claim here are Men's Wearhouse (as the issuer) and Tailored Brands (as the sole shareholder of the issuer).   Plaintiff's argument that he has Section 16(b) standing as a shareholder of Tailored Brands thus fails. *See Lewis*, 762 F.2d at 804 ("We will not confer standing on a plaintiff who falls outside the class of persons permitted by the language of the statute to bring suit merely because the only parties falling within the class choose not to exercise their right to sue.").

Plaintiff makes two additional arguments to support his Section 16(b) standing, each of which involves 17 C.F.R. § 230.414 ("Rule 414").   Rule 414 provides, in relevant part, that "if any

10

issuer has been succeeded by an issuer for the purpose of changing its form of organization, the registration statement of the predecessor issuer shall be deemed the registration statement of the successor issuer for the purpose of continuing the offering" so long as certain enumerated requirements are met. 17 C.F.R. § 230.414. One of these requirements is that the successor issuer must "acquire[ ] all of the assets . . . of the predecessor issuer." *Id.* § 230.414(b).

Plaintiff's first Rule 414 argument begins with the assumption that the Reorganization satisfied Rule 414's requirements. According to Plaintiff, if Rule 414 was satisfied, Tailored Brands necessarily acquired Men's Wearhouse's Section 16(b) claim because it was an "asset" of Men's Wearhouse. *See* Pl.'s Opp. at 20–22. Moreover, because Men's Wearhouse's registration statements were effectively transferred to Tailored Brands in its capacity as a "successor issuer," Plaintiff argues that Tailored Brands stepped into Men's Wearhouse's shoes as the entity that "actually issued" the securities that Eminence Capital is alleged to have bought and sold in violation of Section 16(b). *See id.* at 19. Plaintiff thus contends that Tailored Brands is now the "issuer" for purposes of Section 16(b), and that he has standing to bring this action. *See id.*

Alternatively, Plaintiff argues that the Reorganization failed to comply with Rule 414's requirements and was therefore "void *ab initio*." Am. Compl. ¶ 3(d); *see also* Pl.'s Opp. at 22–23. Under this alternative theory, Tailored Brands violated Section 5 of the Securities Act of 1933 (the "Securities Act") because it engaged in a stock-for-stock swap with Men's Wearhouse without an effective registration statement. *See* Pl.'s Opp. at 23. This violation, in turn, would theoretically provide the basis for Plaintiff to bring a suit to rescind the Reorganization under Section 12(a)(1) of the Securities Act. *See id.* Plaintiff suggests that if the Reorganization were rescinded, he would revert to being a shareholder of Men's Wearhouse and would thus have standing. *See id.*

11

Neither of these novel arguments is persuasive. By its own terms, Rule 414 deals solely with whether successor issuers may rely on the registration statements of predecessor issuers. *See* 17 C.F.R. § 230.414. The Rule says nothing about whether shareholders of successor issuers can bring Section 16(b) claims on behalf of predecessor issuers. Whether Tailored Brands may or may not have satisfied Rule 414 has no direct bearing on the separate question of who may or may not bring Section 16(b) claims on behalf of Men's Wearhouse. Moreover, and tellingly, Plaintiff does not cite to any precedent purporting to establish such a relationship between Rule 414 and Section 16(b). As such, the Court finds no convincing reason to disturb the general principle, established in *Gollust*, that only the issuer or the shareholders of the issuer may bring Section 16(b) lawsuits to recover unlawful short-swing profits. *See Gollust*, 501 U.S. at 122–24.

Plaintiff also alleges that the Reorganization "was a fraudulent effort to deprive Plaintiff of standing to pursue his Section 16(b) claims." Am. Compl. ¶ 3(d). To the extent that Plaintiff means to argue that allegations of fraud justify setting aside the Section 16(b) standing requirement, the Court disagrees, and takes heed of the Supreme Court's instruction to construe any ambiguities within Section 16(b)'s scheme narrowly. *Gollust*, 501 U.S. at 122 ("Because the statute imposes liability without fault within its narrowly drawn limits, we have been reluctant to exceed a literal, mechanical application of the statutory text in determining who may be subject to liability, even though in some cases a broader view of statutory liability could work to eliminate an evil that Congress sought to correct through § 16(b)." (citation and quotation marks omitted)); *see also Levy v. Southbrook Int'l Invs., Ltd.*, 263 F.3d 10, 16 (2d Cir. 2001) (holding that Section 16(b) should be construed "only within narrowly drawn limits" (quotation marks omitted)). A "literal, mechanical application of the statutory text" does not contemplate providing standing to plaintiffs who are neither the issuer nor a shareholder of the issuer at the time the lawsuit is filed,

12

regardless of whether such standing might have been stripped due to a fraudulent reorganization. *Gollust*, 501 U.S. at 122 (quotation marks omitted); *accord Magma Power Co. v. Dow Chem. Co.*, 136 F.3d 316, 320–21 (2d Cir. 1998) ("Section 16(b) operates mechanically, and makes no moral distinctions, penalizing technical violators of pure heart, and bypassing corrupt insiders who skirt the letter of the prohibition."); *Mendell ex rel. Viacom, Inc. v. Gollust*, 909 F.2d 724, 731 (2d Cir. 1990) (declining to "inquire whether the merger was orchestrated for the express purpose of divesting plaintiff of standing" in accordance "with § 16(b)'s objective analysis regarding defendants' intent"), *aff'd on other grounds*, 501 U.S. 115 (1991). The Court therefore declines to confer Section 16(b) standing on Plaintiff based on his allegations of fraud.

## CONCLUSION

For the reasons discussed above, Plaintiff lacks standing under Section 16(b) of the Exchange Act. The Court therefore grants Defendants' motion and dismisses this action. The Clerk of Court is respectfully directed to close the case.

SO ORDERED.

Dated: March 1, 2017
      New York, New York

 

Ronnie Abrams
United States District Judge